**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL ACTION NO. 5:24-CV-192-KDB-SCR**

WALTER KEVIN CARPENTER,

      **Plaintiff,**

  v.

THE CITY OF NEWTON, KEVIN
YODER, and BRIAN KEITH
WHITENER,

      **Defendants.**

---

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 9).

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motion be <u>granted in part</u> and <u>denied in part</u>.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Accepting the factual allegations of the Amended Complaint (Doc. No. 7) as true for the purposes of evaluating this Motion to Dismiss, Plaintiff Walter Kevin Carpenter ("Plaintiff") was an employee of Defendant City of Newton (the "City") and its Fire Department (the "Fire Department") from approximately October 8, 2004, until approximately June 22, 2022. <u>Id.</u> ¶¶ 10, 20. At the time of the alleged discrimination, Plaintiff was fifty-four years old and was the oldest

employee at the Fire Department.  Id. ¶¶ 1, 32.  Defendant Chief Kevin Yoder ("Chief Yoder") and Defendant Deputy Chief Brian Keith Whitener ("Whitener") acted with express, implied, or apparent authority of the Fire Department and City.  Id. ¶ 7.  Chief Yoder's duties included hiring and terminating employees.  Id. ¶ 41.

Plaintiff alleges that Defendants made several ageist comments toward him in public, such as his supervisor, Battalion Chief Kenneth Huffman ("Huffman"), saying, "We're going to push you down the steps and you won't recover."  Id. ¶ 12.  On approximately June 4, 2022, Huffman ordered Plaintiff to respond on the ladder truck to a structure fire.  Id. ¶¶ 13-14.  Huffman chose to put on his turnout gear and assist with the fire.  Id. ¶13.  After the call, Defendant Whitener reprimanded Plaintiff for not putting on his turnout gear.  Id.  Plaintiff contends that he did not have an opportunity to put on his turnout gear.  Id.  The following day, Chief Yoder criticized Plaintiff, allegedly saying, "'You think you don't have to do anything but run the truck . . . [a]ll of the younger guys go in and actually fight fires.'"  Id. ¶ 14.

On or about June 15, 2022, when Plaintiff was preparing to take leave for vacation, he texted Huffman: "In the famous words of Cody Lawing, F U and F U and I am out of here."  Id. ¶ 19.  Cody Lawing ("Lawing"), an employee under the age of forty, used this phrase often to joke with various members of the Fire Department, stating the full explicative when doing so, and, at times, directing his words toward Huffman.  Id. ¶¶ 16-18, 36.  Lawing, however, was never terminated or reprimanded for using this language as it was known to be made in jest.  Id. ¶¶ 17, 36.  Plaintiff claims he sent the text to Huffman jokingly, and Huffman admitted he perceived the text as a joke, not a threat.  Id. ¶¶ 19, 36.

On June 22, 2022, the first day after Plaintiff returned from vacation, the City terminated Plaintiff.  Id. ¶ 20.  The City referenced personnel policy IV.10(b)(18), which prohibits "abusive

and/or threatening language to a supervisor" in terminating Plaintiff. Id. ¶ 36. Before his termination, Plaintiff's employment record was "virtually spotless," and he was not "warned that one incident such as this could lead immediately to his termination." Id. ¶ 36. Plaintiff appealed his termination to Chief Yoder, following the appeals process as prescribed by the Defendant City in its policies and procedures distributed to all employees. Id. ¶ 21. During his appeal, Plaintiff alleges that Chief Yoder and the City Manager arbitrarily denied him a hearing. Id. ¶¶ 57, 80-81. Plaintiff alleges that the timing between Chief Yoder's ageist comments and his termination, as well as the fact that Lawing's comments were never reprimanded, demonstrate he was wrongfully terminated because of age discrimination. Id. ¶¶ 15, 17, 22.

Further, Plaintiff contends that approximately half of the Fire Department employees ("Discriminated Against Employees") faced discrimination and/or were wrongfully terminated because of discrimination since Plaintiff's wrongful termination. Id. ¶¶ 47-48.

In August and September of 2022, after his termination, Plaintiff applied to other county jobs, including at the Catawba County Communications Center and the Catawba County Detention Center. Id. ¶ 62. Plaintiff alleges he was objectively the most qualified candidate for these positions and reached the final stage of the hiring process for both jobs, with the last step being to complete a background check. Id. ¶¶ 63-64. However, Plaintiff was denied employment for these jobs. Id. ¶ 66. Plaintiff alleges, upon information and belief, that Chief Yoder engaged in false and unsolicited statements to prevent the prospective employers from hiring Plaintiff due to his personal animosity toward Plaintiff. Id. ¶¶ 68-70.

On or about September 22, 2022, Defendant Whitener sought and obtained a warrant for Plaintiff's arrest for the charge of "Communicating Threats" based on an anonymous text message Whitener received. Id. ¶ 84. According to Plaintiff, Defendant Whitener prosecuted a separate

criminal action against Plaintiff in Catawba County District Court as a result of his personal malice against Plaintiff. Id. ¶ 85. Plaintiff alleges the criminal action was without probable cause, because among other things, there was no direct evidence linking Plaintiff to the phone number used to send the threatening text. Id. ¶ 86. Plaintiff contends Defendant Whitener initiated the criminal action to embarrass and intimidate Plaintiff, including dissuading Plaintiff from filing the instant civil lawsuit. Id. ¶ 87. Plaintiff alleges that the proceedings were dismissed in Plaintiff's favor because Plaintiff was not required to enter a plea deal nor was Plaintiff found guilty of any charge. Id. ¶ 88.

Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging that Defendants violated the Age Discrimination in Employment Act ("ADEA"), codified in 29 U.S.C. § 623 et seq. Id. ¶ 24. Plaintiff received the EEOC's "Right-to-Sue Letter" on January 6, 2024. Id. ¶¶ 25-26.

On March 28, 2024, Plaintiff filed a Complaint in Catawba County Superior Court. Id. ¶ 28; (Doc. No. 1-1).

On August 27, 2024, Defendants removed this matter to the United States District Court for the Western District of North Carolina alleging federal question jurisdiction. (Doc. No. 1). Removal has not been challenged.

On October 8, 2024, Plaintiff filed an Amended Complaint (Doc. No. 7), which contains the following causes of action: (1) age discrimination in violation of the ADEA (Against Defendant City of Newton); (2) termination in violation of North Carolina public policy (Against All Defendants); (3) blacklisting/tortious interference with prospective contract (Against Defendants City of Newton and Chief Yoder); (4) denial of due process/breach of contract (Against Defendant City of Newton); and (5) malicious prosecution/abuse of process (Against

Defendant Whitener). (Doc. No. 7). Defendants move to dismiss Plaintiff's Amended Complaint. (Doc. No. 9).

## II.     DISCUSSION

### A.  Standard of Review

Although Defendants have moved to dismiss under 12(b)(1), (b)(2)[1], and (b)(6), the Court will review Defendants' Motion under the 12(b)(6) standard. The Supreme Court clarified in <u>Fort Bend County v. Davis</u> that the exhaustion requirement under Title VII is not jurisdictional, but rather is a "mandatory claim-processing rule" that should be reviewed under the 12(b)(6) standard. 587 U.S. 541, 550-52 (2019). Courts have found this holding extends to ADEA. <u>See</u> <u>Hodge v. Walrus Oyster Ale House</u>, No. CV TDC-18-3845, 2019 WL 6069114, at *3 (D. Md. Nov. 15, 2019) ("Rule 12(b)(1) is. . . an improper vehicle through which to enforce the exhaustion requirements of both Title VII and the ADEA" and "[t]he Court will instead treat [d]efendants' arguments regarding . . . purported failure to exhaust as raised under Rule 12(b)(6)"); <u>Allen v. Wire</u>, No. 1:19CV689, 2020 WL 4586722, at *3 (M.D.N.C. Aug. 10, 2020) (citing <u>Davis</u>, 587 U.S. at 550-51 and assessing defendant's purported failure to exhaust arguments under 12(b)(6)), <u>report and recommendation adopted</u>, No. 1:19-CV-689, 2020 WL 5549104 (M.D.N.C. Sept. 16, 2020).

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.

---

[1] Although Defendants move under 12(b)(1) and (b)(2), the substance of Defendants' argument centers around failure to exhaust administrative remedies because Plaintiff's Amended EEOC Charge differs from the claims in Plaintiff's Amended Complaint. (Doc. No. 9-1 at 7-9).

544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. Id. at 678-79. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 679; see also Anand v. Ocwen Loan Serv., LLC, 754 F.3d 195, 198 (4th Cir. 2014) (recognizing the court does not accept as true legal conclusions couched as a factual allegations). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Although the pleading requirements stated in Rule 8 of the Federal Rules of Civil Procedure mark "a notable and generous departure from the hypertechnical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court assumes their truth and then determines whether they plausibly give rise to an entitlement to relief. Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989). Where "it is clear that no relief could be granted under any set of facts that could be prove[n] consistent with the allegations . . . a claim must be dismissed." Id. at 327 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

### B. Failure to Exhaust Administrative Remedies

Defendants contend that Plaintiff has failed to exhaust his administrative remedies because Plaintiff's Amended Charge of Discrimination filed with the EEOC differs from those allegations in the Amended Complaint.

When a plaintiff brings a charge with the EEOC, the charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005) (quotation omitted); see also Miles v. Dell, Inc., 429 F.3d 480, 491-92 (4th Cir. 2005). This requirement provides the employer notice of its employee's claims and an opportunity to resolve those claims out of court, if possible. Miles, 429 F.3d 492. So long as "a plaintiff's claims in [the] judicial complaint are reasonably related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation," the plaintiff "may advance such claims in [the] subsequent civil suit." Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 594 (4th Cir. 2012) (citing Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000)). "[A] plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." Chacko, 429 F.3d at 506.

Defendants argue that "Plaintiff failed to include many of the bases for discrimination on the basis of his age" and, therefore, "should not be allowed to proceed with an ADEA claim on those bases." (Doc. No. 9-1 at 9). Defendants acknowledge that Plaintiff filed the EEOC charge alleging he was discriminated against due to his age, which is the same type of discrimination alleged in the instant lawsuit. Id. at 7. Defendants also recognize Plaintiff's EEOC charge contained allegations that Plaintiff was terminated after sending the text message at issue, but a younger employee who regularly made such comments was not reprimanded. Id. Despite this, Defendants challenge Plaintiff's inclusion of other "ageist comments and chastising." Id. at 7-9. Defendants received notice of Plaintiff's EEOC charge related to age discrimination and a reasonable investigation would have revealed the other age-related comments. Further, these facts are reasonably related to the EEOC charge of age discrimination as background and context for the claim. The same supervisors and actors are involved as is the same general timeframe. Accordingly, the undersigned finds that Plaintiff has exhausted his administrative remedies, and respectfully recommends that Defendants' Motion be denied in this respect.

## C. Violation of ADEA Claim

Plaintiff's first cause of action in the Amended Complaint is a claim for violation of the ADEA against Defendant City of Newton. (Doc. No. 7 ¶¶ 30-37). Under the ADEA, it is "unlawful for an employer. . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). At this stage, a plaintiff must plead facts that support: (1) he is in a protected class in that he was at least 40 years-old; (2) he suffered an adverse employment action, such as termination; (3) he performed his job duties at a satisfactory level that met the employer's legitimate expectations at the time of the adverse employment action;

and (4) the employer treated similarly situated employees outside of the protected class differently. See Dugan v. Albemarle Cnty. Sch. Bd., 293 F.3d 716, 720-21 (4th Cir. 2002); Coleman v. Md. Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010); Loose v. CSRA Inc., No. 19-2394, 2021 U.S. App. LEXIS 29405, at *4-5 (4th Cir. Sept. 29, 2021). See also Tickles v. Johnson, 805 F. App'x 204, 207 (4th Cir. 2020) (discussing the pleading requirements for an ADEA claim to survive a Rule 12(b)(6) motion to dismiss).

In disciplinary cases where "a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason," a plaintiff must generally show that the individual "'is directly comparable to h[im] in all material respects' except age and that person received more favorable treatment." Holtz v. Jefferson Smurfit Corp., 408 F. Supp. 2d 193, 206 (M.D.N.C. 2006) (citation omitted); see also Heyward v. Monroe, No. 97-2430, 1998 U.S. App. LEXIS 30855, at *6 (4th Cir. Dec. 7, 1998) (the plaintiff must demonstrate that she is "similar in all relevant respects" to the comparator). To be "similarly situated," the plaintiff and the comparator "'must have dealt with the same supervisor, have been subject to the same standards[,] and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Holtz, 408 F. Supp. 2d at 206 (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

Here, Plaintiff has sufficiently pled discrimination under the ADEA at this initial stage. Plaintiff satisfies the first two elements because Plaintiff alleges he was over 40 years old (Doc. No. 7 ¶ 32) and that "the termination of the Plaintiff was an adverse employment action taken. . . by his employer, Defendant City." Id. ¶ 33. In addition, Plaintiff plausibly asserts the third element because he alleges that his employment record at the Fire Department was "virtually spotless"

before his termination.  Id. ¶ 36.  Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 302 (4th Cir. 2010); see also Arthur v. Pet Dairy, 593 F. App'x 211, 217 (4th Cir. 2015).  Although Plaintiff was reprimanded two weeks prior to his termination for failing to put on turnout gear in response to a call, Plaintiff alleges he was following orders to run the truck.  Id. ¶¶ 13-15.

Plaintiff also sufficiently alleges that Defendant City treated a younger, similarly situated employee outside of the protected class differently.  Plaintiff compares Defendant's treatment and termination following his use of expletive language to Defendant's lack of response toward Lawing's use of the same or similar language.  Id. ¶¶ 16-20, 23, 36.  The Amended Complaint alleges Plaintiff and Lawing had the same supervisor, Huffman (id. ¶¶ 6, 17, 19), and that both served under Chief Yoder and Deputy Chief Whitener.  Id. ¶¶ 7, 16, 18, 34, 36.  Plaintiff alleges he and Lawing are similarly situated except for age, engaged in similar conduct, but were treated differently.  Id. ¶¶ 18, 36.  Accordingly, Plaintiff has presented a plausible claim of age discrimination.  See Matthews v. Novant Health, Inc., No. 3:09CV494-RJC-DSC, 2010 WL 2131559, at *6 (W.D.N.C. Apr. 29, 2010), memorandum and recommendation adopted, No. 3:09CV494-RJC-DSC, 2010 WL 2131775 (W.D.N.C. May 25, 2010) (similarly denying motion to dismiss plaintiff's ADEA claim where plaintiff pointed to specific instances of comparators outside the protected groups being treated differently).

Defendants also argue that Plaintiff failed to state a disparate treatment claim under ADEA because Plaintiff has not demonstrated that age was the "but-for" cause of his termination or adverse employment action.  (Doc. No. 9-1 at 9); Gilliam v. Bertie Cnty. Bd. of Educ., No. 2:20-CV-16-D, 2022 WL 843090, at *4 (E.D.N.C. Mar. 21, 2022) (citing O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310–13 (1996)) (noting the elements for a disparate treatment claim under ADEA, including that plaintiff must show "the employer took [the] adverse employment

action under circumstances giving rise to an inference of age discrimination"); see also Amis v. Pekoske, No. 320CV00541-FDW-DCK, 2021 WL 783543, at *3 (W.D.N.C. Mar. 1, 2021), aff'd sub nom., No. 21-1544, 2022 WL 1090252 (4th Cir. Apr. 12, 2022) (quoting Buchhagen v. ICF Intern., Inc., 545 F. App'x 217, 220 (4th Cir. 2013) ("Age must be the 'but-for' cause of the employer's action for the action to violate the ADEA.").

The undersigned finds Plaintiff has alleged sufficient facts that the employer took an adverse employment action under circumstances giving rise to an inference of age discrimination. Plaintiff has alleged certain derogatory comments made related to his age by those in the supervisory chain, (Doc. No. 7 ¶¶ 12, 14, 34, 36), and that Plaintiff was terminated within a month of certain comments. Id. ¶¶ 14, 19, 20, 34, 36. This, combined with Plaintiff's allegations related to the different responses to the similar conduct of Plaintiff and Lawing, create an inference of age discrimination at this initial stage. Arthur, 593 F. App'x at 219 (quoting Jackson v. Cal-W. Packaging Corp., 602 F.3d 374, 380 (5th Cir. 2010)) (analyzing whether derogatory or disparaging comments qualify as actionable age discrimination, which require that the statements are: "1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'"); Ray v. Amelia Cnty. Sheriff's Office, 302 F. App'x 209, 211–12 (4th Cir. 2008) (vacating the district court's dismissal at the pleading stage of ADEA claim where plaintiff alleged several possible reasons for her termination that related to her age).

Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss be denied as to Plaintiff's ADEA claim.

### D. <u>Termination in Violation of North Carolina Policy Claim</u>

Plaintiff's second cause of action in the Amended Complaint is a claim for wrongful termination in violation of North Carolina public policy against all Defendants.[2]  (Doc. No. 7 ¶¶ 38-60).  Under North Carolina's Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2 ("NCEEPA"), "[i]t is the public policy of [North Carolina] to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of. . . age. . . by employers which regularly employ 15 or more employees."  N.C. Gen. Stat. § 143-422.2.

As to the individual Defendants, "North Carolina courts have never recognized a cause of action for wrongful discharge against an individual defendant who was acting as an agent of the employer."  <u>Williams v. Vogler</u>, No. 6:91CV00637, 1992 U.S. Dist. LEXIS 22528, at *5 (M.D.N.C. Mar. 6, 1992); <u>see also</u> <u>Myers v. Town of Landis</u>, 957 F. Supp. 762, 771 (M.D.N.C. 1996) ("The North Carolina Court of Appeals has held that an action for wrongful discharge will lie only against an employer, and not against individual employees").  Therefore, Plaintiff's claims of wrongful discharge in violation of public policy against the individual Defendants are improper and must be <u>dismissed</u>.

Turning to the claim against Defendant City, "North Carolina generally adheres to the employment at-will doctrine, meaning that an employee without a definite term of employment may be discharged for any reason and has no claim for wrongful discharge against his employer."  <u>Carter v. Sizzling Platter, LLC</u>, No. 3:23CV117-GCM, 2023 U.S. Dist. LEXIS 123787, at *2 (W.D.N.C. July 18, 2023) (quoting <u>Baucom v. Cabarrus Eye Ctr., P.A.</u>, No. 1:06CV00209, 2007 U.S. Dist. LEXIS 25101, at *6 (M.D.N.C. Apr. 4, 2007)).  "The employment at-will doctrine,

---

[2] The undersigned observes that Plaintiff has pled the Termination in Violation of Public Policy claim "additionally and/or alternatively."  (Doc. No. 7 ¶ 39).

however, is subject to a public policy exception that provides that an employer cannot terminate an employee-at-will for a reason which is in violation of the public policy of North Carolina." Id. (citing Amos v. Oakdale Knitting Co., 416 S.E.2d 166, 168 (N.C. 1992) and Coman v. Thomas Mfg. Co., 381 S.E.2d 445, 447 (N.C. 1989)).

In his Amended Complaint, Plaintiff has lumped together multiple theories and bases to support this cause of action against Defendant City. Because the undersigned has already found that Plaintiff has stated a claim with respect to age discrimination under ADEA, the undersigned similarly finds for those same reasons that Plaintiff has stated a claim for wrongful termination based on age discrimination in violation of N.C. Gen. Stat. § 143-422.2. Moser v. Driller's Serv., Inc., 988 F. Supp. 2d 559, 565-66 (W.D.N.C. 2013) (recognizing North Carolina has adopted the same standards for analyzing an ADEA claim and a state law claim under N.C. Gen. Stat. § 143-422.2); Magaha v. W & B Trucking, Inc., No. 115CV00159MOCDLH, 2015 WL 8759260, at *3 (W.D.N.C. Dec. 14, 2015) ("When considering a wrongful discharge claim on the basis of age under North Carolina law, the court applies the same standards applied under the ADEA) (citations omitted); Matthews v. Novant Health, Inc., No. 3:09CV494-RJC-DSC, 2010 WL 2131559, at *7 (W.D.N.C. Apr. 29, 2010), memorandum and recommendation adopted, No. 3:09CV494-RJC-DSC, 2010 WL 2131775 (W.D.N.C. May 25, 2010) ("For the same reasons that Plaintiff has pled sufficient facts to support her federal claims for wrongful discharge, she has also sufficiently pled her state public policy claim."); Alderman v. Inmar Enters., Inc., 201 F. Supp. 2d 532, 546 (M.D.N.C. 2002), aff'd, 58 F. App'x 47 (4th Cir. 2003) ("In determining the parameters of an age discrimination claim under N.C. Gen. Stat. § 143–422.2, the Court should apply the same standards that apply under the ADEA.).

However, Plaintiff intermingles other allegations and theories not recognized under N.C. Gen. Stat. § 143-422.2. (Doc. No. 7 ¶¶ 40, 42, 45, 47, 51, 52, 53, 54, 55, 60). Indeed, "North Carolina courts and federal courts applying North Carolina law have . . . repeatedly [found] that no private cause of action exists for retaliation [or] hostile work environment. . . in violation of public policy." Gelin v. N-Able Techs., Inc., No. 5:22-CV-345-FL, 2023 WL 3079420, at *5 (E.D.N.C. Apr. 25, 2023) (quoting Jones v. Duke Energy Corp., 43 F. App'x 599, 600 (4th Cir. 2002); Creech v. City of Wilson, No. 5:19-CV-70-FL, 2019 WL 3720744, at *2 (E.D.N.C. Aug. 7, 2019); Onwe v. Waste Indus., Inc., No. 5:15-CV-611-D, 2016 WL 6330387, at *2 (E.D.N.C. Oct. 26, 2016) ("Section 143-422.2. . . does not create a private right of action for retaliation or provide a source of public policy concerning retaliation). "[A]bsent a clear indication from the courts or the legislature of North Carolina that a private right of action does exist under the NCEEPA, it would be inappropriate for a federal court to create a private right of action under the NCEEPA, and this court declines to do so." Smith v. First Union Nat. Bank, 202 F.3d 234, 247 (4th Cir. 2000) (quoting Mullis v. Mechs. & Farmers Bank, 994 F. Supp. 680, 687 (M.D.N.C. 1997)). As a result, to the extent Plaintiff has alleged claims for retaliation or harassment under N.C. Gen. Stat. § 143-422.2, these claims fail.[3]

Accordingly, the undersigned respectfully recommends that Defendants' Motion be granted in part and denied in part with respect to Plaintiff's claim under N.C. Gen. Stat. § 143-422.2. For clarity, the undersigned recommends only Plaintiff's wrongful termination claim based on age discrimination against Defendant City remain.

---

[3] Plaintiff alleges he was retaliated or discriminated against by Defendant City based on his protected speech under the North Carolina Constitution or the U.S. Constitution, but these claims similarly fail. Watson v. Town of Mint Hill, No. 320CV00721FDWDCK, 2021 WL 2827297, at *3 (W.D.N.C. July 7, 2021) ("Of notable importance to [p]laintiff's claim, a plaintiff is not entitled to a direct constitutional claim when his or her rights are adequately protected by a wrongful discharge claim) (citing Phillips v. Gray, 592 S.E.2d 229. 223 (N.C. App. 2004)); Gelin, 2023 WL 3079420, at *5; Creech, 2019 WL 3720744, at *2; Onwe, 2016 WL 6330387, at *2.

### E. **Blacklisting/Tortious Interference Claim**

Plaintiff's also makes claims against the City and Chief Yoder for blacklisting and, additionally or in the alternative, tortious interference with a prospective contract. (Doc. No. 7 ¶¶ 61-75). The North Carolina statute prohibiting blacklisting provides:

> If any person, agent, company or corporation, after having discharged any employee from his or its service, shall prevent or attempt to prevent, by word or writing of any kind, such discharged employee from obtaining employment with any other person, company or corporation, such person, agent or corporation shall be guilty of a Class 3 misdemeanor and shall be punished by a fine not exceeding five hundred dollars ($500.00); and such person, agent, company or corporation shall be liable in penal damages to such discharged person, to be recovered by civil action. This section shall not be construed as prohibiting any person or agent of any company or corporation from furnishing in writing, upon request, any other person, company or corporation to whom such discharged person or employee has applied for employment, a truthful statement of the reason for such discharge.

N.C. Gen. Stat. § 14-355. The North Carolina Court of Appeals has held that damages under this provision may not be recovered against a municipality absent statutory authorization, "which G.S. § 14–355 fails to provide." Maness v. Vill. of Pinehurst, N. Carolina, No. 1:20-CV-344, 2020 WL 13043409, at *1 (M.D.N.C. Oct. 7, 2020) (citing Houpe v. City of Statesville, 497 S.E.2d 82, 93 (N.C. Ct. App. 1998)); Miller v. N. Carolina State Univ., No. 5:18-CV-523-FL, 2019 WL 3686592, at *6 n.7 (E.D.N.C. Aug. 6, 2019). As a result, the claim against Defendant City must be dismissed.

The claim against Chief Yoder must be dismissed for the same reason dismissal of the claim against the City is appropriate. Maness, 2020 WL 13043409, at *1 (similarly dismissing the claim against the Chief of Police); Houpe, 497 S.E.2d at 93.[4]

---

[4] Aside from the caselaw that warrants dismissal, the undersigned also notes that Plaintiff has failed to sufficiently plead a claim because Plaintiff's Complaint provides almost no detail on the statements purportedly made. Nuqul v. State Farm Mut. Auto. Ins. Co., No. 7:24-CV-51-BO-KS, 2024 U.S. Dist. LEXIS 138562, at *6 (E.D.N.C. Aug. 2, 2024) (granting the defendant's motion to dismiss in part because plaintiff alleged blacklisting "upon information and belief" with "no additional factual support"); Wilson v. Forsyth Med. Grp., LLC, No. 1:19CV801, 2020 U.S. Dist. LEXIS 113693, at *14 (M.D.N.C. June 29, 2020) (dismissing plaintiff's blacklisting claim in part because plaintiff "fail[ed] to identify any actions taken or representations made by Defendants beyond one vague statement.").

The tortious interference claim fails too. Under North Carolina law, the elements of a tortious interference with contract claim are:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

King v. Chaffin, 759 F. Supp. 3d 690, 698 (W.D.N.C. 2024) (quoting Craft v. Tabor, No. 3:19-cv-469, 2021 U.S. Dist. LEXIS 252032, at *14 (W.D.N.C. Mar. 1, 2021)); see also United Labs., Inc. v. Kuykendall, 370 S.E.2d 375, 387 (N.C. 1988). "[T]ortious interference with prospective economic advantage allows a plaintiff to recover against a third party for preventing the formation of a contract, while tortious interference with contract allows recovery for interfering with the rights of a plaintiff under a valid, executed contract." Alexander v. City of Greensboro, No. 1:09-CV-00293, 2013 WL 6687237, at *23 n.41 (M.D.N.C. Dec. 18, 2013). "[T]o maintain an action for tortious interference with prospective advantage, [p]laintiff must show that [d]efendants induced a third party to refrain from entering into a contract with [p]laintiff without justification" and that "the contract would have ensued but for [d]efendants' interference." Beck v. City of Durham, 573 S.E.2d 183, 191 (N.C. Ct. App. 2002) (citations omitted).

Plaintiff's Amended Complaint is currently deficient as to the third and fourth elements. Plaintiff's Amended Complaint avers that Defendant Yoder "acted intentionally" and "purposefully" in a conclusory fashion. (Doc. No. 7 at ¶¶ 70, 71). Plaintiff's conclusory statements are underscored when Plaintiff states that he "will provide additional information regarding the specific statements made by the Defendants after using the subpoena power. . . to compel the prospective employers and other witnesses to the statements made to them." Id. at ¶ 74. Plaintiff's Amended Complaint also alleges that Defendant Yoder acted "with personal

malice" and had "personal animosity toward the Plaintiff," but "[i]t is not enough, however, to show that a defendant acted with actual malice; the plaintiff must forecast . . . that the defendant acted with legal malice." Varner v. Bryan, 440 S.E.2d 295, 298 (N.C. Ct. App. 1994). "A person acts with legal malice if he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties." Id. Accordingly, Plaintiff must plead sufficient facts to show that Defendants acted with legal malice, but the Amended Complaint is lacking in this respect. Id. While Plaintiff need not plead the claim in detail, Plaintiff's Amended Complaint must plausibly allege facts that support the elements consistent with the Iqbal and Twombly standards. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

Therefore, the undersigned respectfully recommends that Plaintiff's "Third Claim of Relief for Blacklisting/Tortious Interference" be dismissed.

### F. Denial of Due Process and Breach of Contract Claim

Plaintiff's fourth claim against Defendant City is for denial of due process and for breach of contract. (Doc. No. 7 ¶¶ 76-82). "The procedural safeguards encompassed by the due process clause extend to [a plaintiff's] continued employment only if she had a property interest in that employment." Pittman v. Wilson Cnty., 839 F.2d 225, 226 (4th Cir. 1988). "Under North Carolina law, subject to a few well-defined exceptions, absent some form of contractual agreement between an employer and employee establishing a definite period of employment, the employment is presumed to be an 'at-will' employment, terminable at the will of either party, irrespective of the quality of performance by the other party." Pittman, 839 F.2d at 227. An employee subject to "at-will" employment has "no property interest in the employment which may form the basis for a denial of due process claim." Buchanan v. Hight, 515 S.E.2d 225, 228 (N.C. Ct. App. 1999).

Plaintiff has not alleged a contract or other basis that would establish a definite period of employment.

Plaintiff also alleges that the City violated Plaintiff's due process rights by failing to allow Plaintiff to have a hearing during the termination appeal process. (Doc. No. 7 ¶¶ 78-79). However, the Fourth Circuit in <u>Pittman</u> held that the county's "internal guidelines to County officials for the administration of the [c]ounty's employment positions, including the disciplining and discharge of employees" were not sufficient to create a property interest. <u>Pittman</u>, 839 F.2d at 227. Accordingly, Plaintiff's claim fails.

Plaintiff raises an interesting point related to his breach of contract claim noting it should not be dismissed because Defendants "did not address the Plaintiff's claim for breach of contract, pled additionally and alternatively." (Doc. No. 10 at 17). Despite Plaintiff raising this issue, Defendants still did not address the breach of contract claim in its reply. (Doc. No. 11). This is understandable as Plaintiff's Amended Complaint paired multiple claims under one heading that tend to make it difficult to decipher the exact claims. The undersigned has closely reviewed Defendants' Motion and supporting briefs and agrees with Plaintiff that Defendants have not specifically addressed the breach of contract claim.[5] Accordingly, the breach of contract claim will proceed at this initial stage, but may be addressed at a later stage of the litigation.

Considering all of this, the undersigned respectfully recommends that Plaintiff's due process claim be dismissed, but that the breach of contract claim remain at this initial stage.

---

[5] As Plaintiff seems to acknowledge, the undersigned presumes the breach of contract claim has been pled in the alternative in light of the wrongful termination claim. <u>Houpe</u>, 497 S.E.2d at 88–89 ("we assume plaintiff's wrongful termination and breach of contract claims to have been advanced in the alternative. Wrongful termination may be asserted only in the context of employees at will, and not by an employee employed for a definite term or ... subject to discharge only for just cause.") The undersigned has already found that Plaintiff has stated a plausible claim for wrongful termination based on age discrimination.

### G. **Malicious Prosecution/Abuse of Process Claim**

Plaintiff asserts claims for malicious prosecution and abuse of process against Defendant Whitener. (Doc. No. 7 ¶¶ 83-89). "[M]alicious prosecution is the prosecution with malice and without probable cause" whereas "abuse of process is the misuse of legal process for an ulterior purpose." Melton v. Rickman, 36 S.E.2d 276, 278 (N.C. 1945). "[T]he distinction between malicious prosecution and abuse of process is that malicious prosecution requires a claim to be improperly instituted, whereas abuse of process requires a wrongful or improper act after the institution of process." Fox v. City of Greensboro, 866 S.E.2d 270, 290 (N.C. Ct. App. 2021) (citing Chidnese v. Chidnese, 708 S.E.2d 725, 730 (N.C. Ct. App. 2011)).

To state a malicious prosecution claim, a plaintiff must plausibly allege that the defendant: (1) initiated or participated in the earlier proceeding; (2) did so maliciously; (3) without probable cause; and (4) the earlier proceeding ended in favor of the plaintiff. Turner v. Thomas, 794 S.E.2d 439, 444 (N.C. 2016) (citing N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc., 742 S.E.2d 781, 786 (N.C. 2013)); see also Shock v. Wells Fargo Bank, N.A., 721 F. Supp. 3d 398, 402-03 (E.D.N.C. 2024); Franklin v. Yancey Cnty., No. 1:09CV199, 2010 WL 317804, at *5-6 (W.D.N.C. Jan. 19, 2010).

"Where the criminal action is withdrawn or terminated by compromise brought about by [the criminal] defendant, an action for malicious prosecution based thereon, will not lie." Franklin, 2010 WL 317804, at *6 (citing Alexander v. Lindsey, 55 S.E.2d 470, 476 (N.C. 1949) and Welch v. Cheek, 34 S.E. 531 (N.C. 1899)). The publicly available court records, of which the Court may take judicial notice, state the case was dismissed listing the reason as "Other" noting that "[a]ll parties have reached a mutual understanding through mediation and are in agreement to the District

Attorney's Office dismissing the charge(s)." (Doc. No. 9-4).[6] Because the underlying criminal action was dismissed based on this mutual understanding through mediation, Plaintiff's malicious prosecution claim fails and must be dismissed.

Turning to Plaintiff's abuse of process claim, the elements are: "(1) a prior proceeding was initiated by defendant to achieve an ulterior motive or purpose; and (2) once that proceeding was initiated, some willful act not proper in the regular prosecution of the proceedings was committed." Franklin, 2009 U.S. Dist. LEXIS 123455, at *11 (citing Semones v. Southern Bell Tel. and Tel. Co., 416 S.E.2d 909, 913 (N.C. Ct. App. 1992) (disc. rev. denied, 421 S.E.2d 153 (N.C. 1992) and Melton v. Rickman, 36 S.E.2d 276 (N.C. 1945)). "[T]he gravamen of a cause of action for abuse of process is the improper use of the process after it has been issued." Chidnese v. Chidnese, 708 S.E.2d 725, 735 (N.C. Ct. App. 2011) (citing Petrou v. Hale, 260 S.E.2d 130, 133 (N.C. Ct. App. 1979)) (emphasis in original). "As a result, '[t]here is no abuse of process where it is confined to its regular and legitimate function in relation to the cause of action stated in the complaint.'" Id. (citing Fin. Corp. v. Lane, 19 S.E.2d 849, 853 (N.C. 1942)). "[C]ourts have repeatedly upheld dismissal of an abuse of process claim when there are no allegations that a defendant misused process after proceedings had been initiated." Id. (citations omitted and emphasis in original).

---

[6] In the context of a motion to dismiss, the Court may properly consider matters of public record without converting the Motion into a motion for summary judgment. See Philips v. Pitt County Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record.") (citing Hall v. Virginia, 385 F.3d 421, 424 (4th Cir. 2004)); see also Fox v. City of Greensboro, 807 F. Supp. 2d 476, 483 n. 5 (M.D.N.C. 2011); Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989). Documents of record from a state court action are such materials of which the Court may take judicial notice because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Sun Chems. Trading Corp. v. CBP Res., Inc., No. 1:01CV00425, 2004 U.S. Dist. LEXIS 15460, at *8 (M.D.N.C. June 3, 2004) (citing Fed. R. Evid. 201(b)); Brown v. Ocwen Loan Servicing, LLC, No. PJM-14-3454, 2015 WL 5008763, at *1 n. 3 (D. Md. Aug. 20, 2015) ("[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment"), aff'd, 639 F. App'x. 200 (4th Cir. 2016). But, the facts must be construed in the light most favorable to the nonmovant. Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by, Reed v. Town of Gilbert, Ariz., 576 U.S. 155 (2015), as recognized in Cahaly v. Larosa, 796 F.3d 399 (4th Cir. 2015).

While Plaintiff alleges an ulterior motive, Plaintiff's Amended Complaint lacks any factual allegations related to an improper "willful act not proper in the regular prosecution of the proceedings was committed." Franklin, 2009 U.S. Dist. LEXIS 123455, at *10; Hewes v. Johnston, 301 S.E.2d 120, 121 (N.C. Ct. App. 1983) (finding dismissal was proper where the third-party complaint alleges a motive of harassment in the filing of suit, but lacked allegations of an improper willful act or anything that could conceivably support a finding of a willful act). Here, Plaintiff does not explicitly identify a willful act. (Doc. No. 7). The other factual allegations, such as Defendant Whitener "wearing his full firefighter uniform rather than civil clothes" or "sitting in front of the court with law enforcement, attorneys, and other court personnel rather than in the audience" and "addressing the court, in uniform, by using the plural 'we' to refer to the City of Newton as an alleged victim. . . " (id. ¶ 87), are insufficient to infer a willful act. See Hewes, 301 S.E.2d at 121. It is also unclear from Plaintiff's Amended Complaint how Defendant Whitener misused process after proceedings had been initiated. See Chidnese, 708 S.E.2d at 735.

For these reasons, the undersigned respectfully recommends that Plaintiff's malicious prosecution and abuse of process claims be dismissed.

### III.  RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 9) be **GRANTED IN PART** and **DISMISSED IN PART**. Specifically, the undersigned respectfully recommends Defendants' Motion be granted and the following claims be dismissed: blacklisting, "tortious interference with prospective contract," denial of due process, malicious prosecution, abuse of process. The undersigned respectfully recommends that Defendants' Motion be denied as to Plaintiff's ADEA claim against Defendant City. The undersigned also recommends granting in

part and denying in part Defendants' Motion related to its termination in violation of public policy claims consistent with this Memorandum and Recommendation. In sum, Plaintiff's following claims remain: Violation of ADEA against Defendant City; wrongful termination based on age discrimination against Defendant City in violation of N.C. Gen. Stat. § 143-422.2; and breach of contract against Defendant City.

## IV. TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Kenneth D. Bell.

**SO RECOMMENDED.**

Signed: September 3, 2025

Susan C. Rodriguez
United States Magistrate Judge